UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 06-10563-RWZ

MIKHAIL SMIRNOV

v.

MICHAEL CHERTOFF, et al.

MEMORANDUM OF DECISION

January 18, 2007

ZOBEL, D.J.

　　　　Plaintiff Mikhail Smirnov ("Smirnov"), a native of Russia and a legal permanent resident of the United States, filed an application for naturalization on July 27, 2002. On January 21, 2003, the U.S. Citizenship & Immigration Services ("USCIS") interviewed him in connection with his application.  Three years later, USCIS having failed to act, plaintiff filed the instant suit against defendants Michael Chertoff, Secretary of the Department of Homeland Security, Emilio T. Gonzalez, Director of USCIS, Denis Riordan, District Director of USCIS for Boston, Massachusetts, and Robert S. Mueller, III, Director of the Federal Bureau of Investigation.  Plaintiff requested that the court exercise statutory jurisdiction over his application under 8 U.S.C. § 1447(b)[1] and grant plaintiff's application or, in the alternative, require defendants to adjudicate his application.  (Docket # 1).

---

[1] Under 8 U.S.C. § 1447(b), if the government fails to make a determination on a naturalization application "before the end of the 120 day period after the date on which the examination is conducted . . . the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter."

Defendants filed an answer to the complaint on June 2, 2006 (Docket # 2) and thereafter moved that the court remand the case to the DHS "for the specific purpose of the approval of the plaintiff's application." (Docket # 10). This court granted the remand motion for the approval of the application and naturalized plaintiff on October 23, 2006.

**I.    Pending Motion**

Plaintiff has now filed a timely motion for attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA") (Docket # 11), which is opposed by the defendant. (Docket # 12). For the following reasons, the motion is allowed and plaintiff awarded attorneys' fees and costs at the rates prescribed by the EAJA, adjusted by the cost of living increase for the Boston area.

**II.   Discussion**

In general, to qualify for an award of attorneys' fees and costs under the EAJA, plaintiff must first establish that he is the "prevailing party."[2] Once plaintiff does so, the burden shifts to the government to demonstrate that "the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). In this case, the government argues that: (1) plaintiff is not the "prevailing party" within the meaning of the statute; and (2) its position was

---

[2] Section 2412(a)(1) of the Act provides, in pertinent part: "a judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States . . . ." 28 U.S.C. § 2412(a)(1). Moreover, Section 2412(b) of the Act provides, in pertinent part: "a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a) . . . ." 28 U.S.C. § 2412(b).

"substantially justified," and thus plaintiff is not entitled to attorneys' fees and costs.

### A.     Entitlement to Attorneys' Fees and Costs

While the statute does not define "prevailing party," courts have held that a plaintiff is a "prevailing party" when there is "a judicially sanctioned change in the legal relationships of the parties." Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health & Human Res., 532 U.S. 598, 605 (2001).  In Buckhannon, the U.S. Supreme Court expressly rejected the notion that a plaintiff is a prevailing party where his or her lawsuit – albeit unsuccessful – was nonetheless the "catalyst" to a change in defendant's actions.  In rejecting the "catalyst theory," the court reasoned that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change."  Id.  Under Buckhannon, then, courts have declined to award attorneys' fees, for example, where plaintiff contended that it "prevailed" by "pressuring" the Massachusetts Port Authority ("Massport") to adopt new regulations regarding public leafleting where Massport was not required by the court to do so.  See New England Regional Council of Carpenters v. Kinton, 284 F.3d 9, 30 (1st Cir. 2002).  There, the First Circuit affirmed the district court's denial of attorneys' fees on the ground that the court below "entered no explicit order compelling, or even leading to, Massport's adoption of the regulations."  Id.

Rather, under Buckhannon, to be a "prevailing party," plaintiff must demonstrate: (1) a "material alteration of the legal relationship of the parties;" and (2) "judicial imprimatur on the change."  Smith v. Fitchburg Public Schools, 401 F.3d 16, 22 (1st Cir.

2005) (quoting Buckhannon).  See, e.g., Homier Distrib. Co. v. City of New Bedford, 188 F. Supp. 2d 33, 37 (D. Mass. 2002) ("plaintiff is entitled to a judgment in its favor, changing the legal relationship of the parties.") (internal citations omitted).

Here, the government argues that plaintiff did not "prevail" but rather that "plaintiff obtained his goal through the voluntary decision by [US]CIS to request that the Court remand the matter to the agency for the specific purpose of approving the plaintiff's application for naturalization while the action was still proceeding."  Defs.' Opp. to Pl.'s Mot. for Attys' Fees at 6.  (Docket # 12). Approval of his application is what plaintiff sought.  He achieved approval by filing and presenting this lawsuit.  On October 12, 2006, this court "allowed [the motion to remand] for approval of the application" and stated that "[t]he court will conduct the naturalization on 10/23/06 at 9 a.m."  It is not clear that, absent the court's grant of the motion to remand with the specification that remand was "for approval of the application," plaintiff's application would have been approved.  Plaintiff is thus the "prevailing party" under Buckhannon.

### B.   "Substantial Justification" for the Government's Position

As noted above, the EAJA does not allow for the award of attorneys' fees and costs where "the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

In general, a position is "substantially justified" if it has a "reasonable basis in both law and fact." United States v. Yoffe, 775 F.2d 447, 449 (1st Cir. 1985).  The test is three-part: (1) "did the government have a reasonable basis for the facts alleged;" (2)

4

"did it have a reasonable basis in law for the theories advanced;" and (3) "did the facts support its theory." Id. at 450.  The government has the burden of demonstrating by a preponderance of the evidence that its position was "substantially justified."  Id.  Here, implicit in the government's contention that plaintiff is not the prevailing party (because the government voluntarily acted on his application) is the argument that its position was "substantially justified."

In determining whether the government's position was "substantially justified," courts analyze both the government's pre-litigation and litigation positions.  See Sierra Club v. Secretary of Army, 820 F.2d 513, 517 (1st Cir. 1987) (noting that the court must take into account "both the position of the federal sovereign in the underlying litigation and the governmental conduct which led to that litigation").

### 1.     The Government's Pre-litigation Position

In general, an applicant for naturalization is required to undergo both investigation and an examination.  See 8 U.S.C. § 1446(a)-(b).  First, the FBI is required to conduct a thorough background investigation of each applicant.  See 8 C.F.R. § 335.1.  After the completion of the FBI background investigation, the applicant must submit to an examination which includes an interview and an oral and written test.  See 8 C.F.R. § 335.2.  If, however, the government fails to make a determination on the application "before the end of the 120 day period after the date on which the examination is conducted . . . the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter."  8 U.S.C. § 1447(b).

5

Here, plaintiff filed his application for naturalization on July 27, 2002. After interviewing plaintiff six months later on January 21, 2003, more than three years elapsed during which plaintiff's background checks were pending. Accordingly, plaintiff contends that the defendants' pre-litigation position was not "substantially justified" because it was characterized by undue delay. In its motion to remand, the government stated that application had not yet been approved due to "a delay in the completion of the security checks by the Federal Bureau of Investigation." Defs.' Mot. to Remand at 1 (Docket # 10). The argument is without merit. It does not matter whether blame for the delay is properly ascribed to the FBI or USCIS; rather the delay renders the government's pre-litigation position not "substantially justified." See, e.g., Salem v. INS, 122 F. Supp. 2d 980, 985 (C.D. Ill. 2000) (awarding attorneys' fees and costs under the EAJA where court concluded government's delay of four years was not "substantially justified"); Jeffrey v. INS, 710 F. Supp. 486, 488 (S.D.N.Y. 1989) (awarding fees where court concluded that delay of sixteen months was not "substantially justified").

### 2.   The Government's Litigation Position

In response to plaintiff's initiation of the instant suit, defendants filed an answer asserting affirmative defenses. (Docket # 2). Defendants then filed a motion for remand, which this court granted. (Docket # 10). While the government eventually -- and commendably -- agreed to grant plaintiff's application, it nevertheless initially disputed plaintiff's entitlement to relief. See, e.g., Defs.' Answer at 2 (contending that "defendants are under no obligation to grant the plaintiff's petition;" and "all actions

6

taken regarding the plaintiff's application were reasonable and based on proper exercise of sound discretion in light of all the circumstances and were based on the record before the agency.")  (Docket # 2).  Moreover, the government does not dispute that a January 2005 Notice from the Department of Homeland Security states that USCIS will expedite an FBI Name Check request where there is a lawsuit pending in federal court.  See Pl's App. for Attys' Fees, Ex. B (Docket # 11-3).

Accordingly, I find that both the defendants' pre-litigation and litigation positions with respect to plaintiff's naturalization application were not "substantially justified."  In addition, I find no "special circumstances [which] make the award of attorneys' fees unjust." 28 U.S.C. § 2412(d)(1)(A).  Plaintiff is therefore entitled to attorneys' fees and costs under the EAJA.  The remaining question concerns the amount of such fees and costs to be awarded.

### C. Amount of Attorneys' Fees and Costs

Plaintiff requests a total of **$4,946.61** in attorneys' fees and costs.  This amount represents 24 hours expended by his attorney, Gregory Romanovsky, in representing him from the inception of the litigation through naturalization at the rate of $172.37 per hour ($4,136.88), plus 3 hours expended in preparation of the instant fee application at $172.37 per hour ($517.11).  In addition, this amount includes costs in the amount of $292.62, which represents $250.00 in filing fees, $30.72 in service of process fees, and $11.90 in copying fees.[3]

---

[3] The EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings

7

First, the government has not contested the reasonableness of the number of hours spent on the instant litigation. Accordingly, I award plaintiff attorneys' fees for 27 hours work.

Second, plaintiff requests that the statutory rate be increased due to an increase in the cost of living. In general under the EAJA, "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor . . . justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). The government has not contested the requested rate and I allow this reasonable request. Cost of living adjustments are calculated by "multiplying the $125 statutory rate by the annual average consumer price index figure for all urban consumers ("CPI-U") for the years in which counsel's work was performed, and then dividing by the CPI-U figure for March 1996, the effective date of EAJA's $125 statutory rate." Thangaraja v. Gonzales, 428 F.3d 870, 876 (9th Cir. 2005) (awarding attorneys' fees and costs under the EAJA and increasing the amount of attorneys' fees awarded by a cost of living increase). Accordingly, I award plaintiff attorneys' fees at the rate of $172.37 per hour.[4]

### III.     Conclusion

---

involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). Plaintiff does not contend that there is a "special factor" (apart from the cost of living adjustment discussed infra, Section C) which justifies a higher fee.

[4] In this case, the cost of living adjustment is computed as follows: In March 1996, the CPI-U for the Boston area was $162.80. (See Pl.'s Application for Attys' Fees, Ex. D (Docket # 11-4)). In 2006, the average annual CPI-U for the Boston area was $224.50. (See id., Ex. E (Docket # 11-5)). Accordingly, for the year 2006, multiplying the statutory rate ($125) by the annual average CPI-U for 2006 ($224.50) and dividing by the CPI-U figure for the Boston area in March 1996 ($162.80) equals $172.37.

Plaintiff is entitled to attorneys' fees and costs as the "prevailing party" in the litigation under the EAJA, and his motion for such fees is allowed. (Docket # 11). Accordingly, he is hereby awarded a total of $4,653.99 in attorneys' fees plus $292.62 costs (total of **$4,946.61**) pursuant to the statutory rate prescribed by the EAJA, adjusted by the cost of living increase for the Boston area.

|  |  |
|---|---|
| January 18, 2007 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL |
|  | UNITED STATES DISTRICT JUDGE |